Commonwealth v. Casey                                          Page 21

1   I believe as <u>Sheahy</u> points out, if there is going to be a
2   waiver in one of these types of cases, you're going to have
3   to ask the defendant–
4           THE COURT: Could one not make the argument here,
5   if he had pressed a Motion for Mistrial based on this, that
6   it would be ineffective assistance of counsel?  Be
7   mistrial, convicted at a later trial, the argument would
8   surely be made you were nuts to move for a mistrial.  You
9   had been told that this jury was, you know, within a few
10  votes of acquitting me.  What are you doing moving for a
11  mistrial?
12          MR. LEWIS: You could make an ineffective
13  assistance of counsel argument.  In law school, that's
14  [inaudible].  But I mean, you know, I think that's, first
15  my view would be that would be a very, yes, you could make
16  that argument, but it would be an incredibly weak one.
17  Because if it's there, and it's that straight forward, then
18  you don't know.  Who knows?  It's just a sort of weird take
19  of this case that you happen to know what that vote was.
20  And that anybody knows, any jury can turn around, you know,
21  even if it is nine to three.  I mean, it happens.  It
22  happened here.  And he–
23          THE COURT: But who would elect to roll the dice,
24  as opposed to being told it's already leaning, the dice are

CAMBRIDGE TRANSCRIPTIONS                                    APRIL 5, 2004

Commonwealth v. Casey                                                    Page 22

1  already leaning nine to three in your favor. Do you want
2  to go with that, or do you want to go back to a 50-50 roll
3  of the dice? Most people would take the nine to three in
4  my favor.
5           MR. LEWIS: Well, that's the point. If he—
6           THE COURT: Which seems to be what happened here.
7           MR. LEWIS: It should be the defendant that makes
8  that, that takes that chance.
9           THE COURT: Mr. Lewis, does it, does it appear
10 that the defendant was not consulted?
11          MR. LEWIS: I believe so.
12          THE COURT: Because the defendant was not
13 present?
14          MR. LEWIS: Correct. Well, the jury, he was in
15 the courtroom—
16          THE COURT: He was present.
17          MR. LEWIS: But there is no indication that, you
18 know, there was a break, and he was consulted, and the
19 trial attorney said—
20          THE COURT: I just didn't know whether this had
21 occurred before the defendant was brought in at some point.
22          MR. LEWIS: No. I don't know if-- I believe he
23 was in the courtroom when this, when the alternate juror
24 was questioned.

Commonwealth v. Casey                                            Page 23

1    THE COURT: I have some questions about other
2    parts of the case before your time is up. If the record
3    shows, as the Commonwealth states that the record shows the
4    jury was only in the courtroom for one minute, how could
5    the victim's antics performing for the jury, have been for
6    longer than one minute? You claim that it was for several
7    minutes.
8    MR. LEWIS: Right, and if—
9    THE COURT: And if they were brought in at 9:02
10   and then were brought out at 9:03, how could that have
11   been, how could that be?
12   MR. LEWIS: I think defense counsel's Affidavit
13   states that his belief was from the way the court officer
14   told him, or pointed out that this was occurring sort
15   forward to [inaudible] or behind fact, that the complaint
16   had actually been there for a while. It wasn't just like
17   hey, they just sat down there. It was they had been there
18   for a little while, and that was what [he relied on].
19   THE COURT: Well, but if the record shows they
20   were brought in at one specific time, which they generally
21   are, they don't just wander, the jury doesn't just wander
22   into the courtroom one by one, they're brought in by the
23   Court Officer. Well, all right.
24   I also want to ask you, you talk in your Reply

Commonwealth v. Casey                                             Page 24

Brief about conversations between the victim and the jurors.  But wasn't there only, the only thing that the Court Officer mentioned a conversation between the victim and the alternate?

        MR. LEWIS:  Yeah, I mean, yeah, and–

        THE COURT:  So they weren't conversation[s].

        MR: LEWIS:  No, and my understanding–

        THE COURT:  There was just that one.

        MR. LEWIS:  --that he, that he saw him, that he approached the alternate in the hallway, and I believe what I may have been referring to in the, in my brief, was that the fact that because there was this interaction, there was no question in say even the complaint, to say hey, did you, when you went by the jury did you say anything?  If so, what did you say?  You know, anything of that nature, just to see if there was or if there wasn't.

        THE COURT:  All right.  And on your ineffective assistance claim about failing to investigate the mental health of the complainant, what should the defense counsel have done to investigate?  I mean,, is the fact that a young victim tells inconsistent stories and has a family member, in this case, not even a full blood family member, a stepbrother–

        MR. LEWIS:  Um-hum.

Commonwealth v. Casey                                           Page 25

1       THE COURT: Is that enough to generate
2   investigation? And how could you possibly get through with
3   [Bishop Fuller] showing [the relevancy]?
4       MR. LEWIS: My understanding of, [inaudible] my
5   understanding of Bipolar Disorder is that it has the
6   strongest genetic link of any of the new disorders. And
7   the argument that I was making is that there was at least
8   enough there for him to look into, to do even a sort of
9   preliminary investigation of something with a lower, um-
10      THE COURT: What's he going to do?
11      MR. LEWIS: With a lower threshold of privilege.
12      THE COURT: What would he do?
13      MR. LEWIS: You know, can you look at, can you
14  even have the judge review, say, DSS records? Or try to
15  get school records--
16      THE COURT: But that can't be done until after
17  you make Stage II relevancy showing [Bishop Fuller]. And
18  you can't possibly make it by saying that he's told
19  inconsistent stories, and he has a stepbrother who's
20  bipolar.
21      MR. LEWIS: Or may be you get in an, you know, an
22  expert to look this stuff over and say, and say, is this
23  enough, in your opinion, in your belief, whatever. You
24  know, try to get more information that can make it, you

Commonwealth v. Casey							Page 26

1    know, a recent decision on that.
2            THE COURT:  Um, is there any affidavit from
3    defense counsel about why he didn't undertake an
4    investigation?
5            MR. LEWIS:  No.  There is a mention in his
6    Affidavit he thought there was something in there about the
7    other brother being bipolar, or something?  That he sort of
8    vaguely knew it, but that was it.  That's all he knew.
9            THE COURT:  And also you um, you refer to the
10   Court Officer's statement to the defendant's family that
11   the verdict was, or what went on in the jury room was a
12   shame, or a sin, or whatever.
13           MR. LEWIS:  Yes.
14           THE COURT:  Um, while it's quite inappropriate,
15   it should never have been said--  I mean, how do you know
16   that that reflect saying more than that he disagreed with
17   the verdict?  What went on in there was sinful because he
18   thinks the guy is innocent.
19           MR. LEWIS:  Right.  You know, I put it in there,
20   just to reflect that you know, the defendant's belief at
21   the time that he didn't believe that he had been the
22   subject of a fair process, and that the integrity of the
23   process had been compromised, in some way.  He knows this
24   alternate was in there, then he gets this statement, you

Commonwealth v. Casey                                        Page 27

know, he doesn't know. He just, he doesn't believe he got a fair trial. And that was, that was put in there, that was part of his thinking at the--

I'm going to turn to the, if there are no more questions, I'll turn to the Plymouth matter. The defense counsel, at the close of the case, after the verdicts had come back, asked the judge, and bail had been revoked, the judge, he asked the judge, "Should I file the Motion for Mistrial regarding the alternate? Do you want me to argue that now?" Something to the effect of do you want me to argue that now, or do you want me to file a motion on it?

THE COURT: Um, if we conclude that the new trial should not have been granted in the Bristol case, then this second case would become moot. Is that correct?

MR. LEWIS: Um, yes, for grounds, yeah, if you got rid of the grounds during that yes, I believe so.

THE COURT: Okay. And even if we didn't decide it, how are you going to meet the second prong of [inaudible]? How would it have made a difference? Because this person, according to what I read in the brief, and what was said in the colloquy, first of all, didn't he admit to the facts in the colloquy and say he was pleading guilty because he was guilty?

MR. LEWIS: You can't use the colloquy if he goes

Commonwealth v. Casey                                    Page 28

1   into it involuntarily or unintelligently.  I mean, the
2   colloquy doesn't, it doesn't involve that.
3           THE COURT:  No, just some of the statements.  He
4   admitted that he did it.  He said on the record under oath
5   that he did these, he committed the crime.  Are you saying
6   that he was perjuring himself?
7           MR. LEWIS:  I'm saying that he went into the plea
8   involuntarily and [unintelligently].  If he thinks, if he
9   goes in and takes the plea, he can't say-- I just, I don't
10  see how you can take the colloquy in whatever it says, to
11  justify of going in the lack of intelligence with a lack of
12  [voluntariness].  He doesn't know—
13          THE COURT:  Okay, but the Notice of Appeal had
14  already been filed.
15          MR. LEWIS:  Right.
16          THE COURT:  The other case was already, the
17  results of that trial were pending the outcome of the
18  appeal.
19          MR. LEWIS:  Right.
20          THE COURT:  So no final judgement yet, or no
21  final judgement of conviction.  By the way, that's
22  something that happens with some regularity, because
23  appeals take a long time, various defendants have appeals
24  of other cases pending—

Commonwealth v. Casey                                              Page 29

1        MR. LEWIS:  Sure.

2        THE COURT:  --at the time they plead guilty to
3   other offenses.  Does that mean that their pleas aren't
4   voluntary?  If ultimately their appeal on some other case
5   turns out to be successful, do we simultaneously have to
6   undo everything they've plead guilty to in the intervening
7   years?

8        MR. LEWIS:  Absolutely not.  I think this case is
9   distinguishable for two, two separate reasons.  Each one is
10  sort of exceedingly unique in its own respect, but when
11  they're combined, it makes it even that much rarer.  I
12  think procedurally this is a unique case, just because of
13  the interrelationship of the two cases.  They're virtually
14  identical cases.  I mean, it's the same judge, the trial
15  lawyer, common charges, common complaint, very similar.

16       THE COURT:  But I gather one other additional
17  other complaint that was not in the other case.

18       MR. LEWIS:  You know, it depends.  All I'm saying
19  is in this case it ends up, the trial judge ends up having
20  one hearing for both cases, and is issuing one Order for
21  both cases.  So it, I think in that sense, the
22  interrelationship of the two is exceedingly close, much—
23       The Court: [MR. GAGNE crossed out]  But how does that cut?  Because that
24  might suggest that this person knows darn well he was just

CAMBRIDGE TRANSCRIPTIONS                                      APRIL 5, 2004

Commonwealth v. Casey                                          Page 30

1   convicted on the basis of the testimony of these very
2   witnesses, who obviously he thought might be vulnerable?  I
3   mean, that suggests that there might be a very good reason
4   to try to cut and run, and to do the best you can on a
5   plea, rather than take another course.
6          MR. LEWIS:  Not if you think you're innocent.
7   And you get—
8          THE COURT:  But no—
9          ~~MR. GAGNE~~ the Court:  Wait a second, if you think you're
10  innocent?  Excuse me.  We're not talking about innocence
11  here.
12         MR. LEWIS:  But if he believes, if he goes--  But
13  anything he does after that Bristol conviction, it's a
14  byproduct of counsel's ineffectiveness [inaudible].
15         THE COURT:  No, but if it were in, if it were
16  ineffectiveness at all, it was simply because of a quirk,
17  something that you admitted unique; that a juror was in the
18  jury room for two minutes.  It had nothing to do with the
19  evidence, and a jury who had just heard all the evidence
20  had just convicted him, and he was pleading, he said, or
21  his attorney said, because he wanted to avoid his family,
22  which included his family, his nephew, from having a second
23  trial.  So why wouldn't that be the same?  Even if it were
24  reversed on appeal, it would have nothing to do with the

Commonwealth v. Casey                                           Page 31

1   evidence in the case, and he's viewing the evidence in the
2   case as strong against him.  It's the victim, as you say,
3   the same everything.  And he was just convicted, so why
4   wouldn't he say, as he did, "Well, I'm going to be
5   convicted here, and I'm going to get more time, so I might
6   as well plead to concurrent time."
7         MR. LEWIS:  Paragraph 3 of the Defendant's
8   Affidavit, which I believe is on page 130 of, or page 30 of
9   the attachments, what he's saying, if you read why, it
10  gives those reasons why he plead guilty, it talked about
11  his family, or whatever, that relies on the existence of
12  the personal conviction.  And if that's not there, and I
13  think as the rest of his Affidavit points out, as even as
14  his request for pro se, his pro se request for transcripts
15  in December of '99 for the Bristol case points out, false
16  testimony.  That was one of the grounds he thought was
17  grounds for reversal of his own appeal.  He didn't even
18  know, if, say, assuming his attorney told him about this
19  alternate juror issue, you would think, even if he thought
20  it was going to take the whole appeal, it would have
21  appeared in that pro se request for transcripts.  But it's
22  not there.
23        I think that, you know, in paragraph 9 of the
24  Defendant's Affidavit says very clearly that if but for

Commonwealth v. Casey                                          Page 32

1   that conviction, I never would have pled guilty. He was
2   out on bail, why would he, and he could get it reversed
3   right away and a mistrial declared, and stay on bail, get
4   the bail reinstated, and you're out, you know, you're not
5   in prison.
6           And I think it also goes, you know, saying not
7   putting the family through it, you know, I think again, it
8   relies on the conviction, but clearly that's not that big a
9   concern, because he went to trial on the Bristol case. If
10  he was so concerned about putting his family through it, he
11  never would have gone through that. He would have just
12  plead the whole thing.
13          THE COURT: But the statement was "I didn't want
14  to put my family through it again."
15          MR. LEWIS: Because of the trial, because there
16  is this conviction.
17          THE COURT: Because of the trial.
18          MR. LEWIS: Because there is a conviction. He
19  doesn't know that it's [infirm] in this way, that it
20  shouldn't even have been there. So going into this, [we
21  don't have time zone] but going into that plea, in his
22  mind, he has this conviction, and that's just the point.
23  If the trial attorney had done what he should have done,
24  what he said he was going to do, that conviction would not

Commonwealth v. Casey                                           Page 33

1    have been there, and he would not have pled guilty.
2            THE COURT: Thank you, Mr. Lewis. Ms. Burbine?
3            MS. BURBINE: May I please the court? Caroline
4    Burbine for the Commonwealth, representing Plymouth County.
5    Judge Chin properly denied the Defendant's Motion to
6    Withdraw his guilty plea in the Plymouth County case, where
7    the colloquy established the defendant's pleas were
8    voluntary and intelligent, and the record shows the
9    defendant did not make them based on poor advice of
10   counsel.
11           Judge Chinn's decision was well within his
12   discretion. He had presided over the Bristol County trial,
13   and he accepted the defendant's guilty plea for Plymouth
14   County, and he was in the best position to determine that
15   justice was done in this case. Um—
16           THE COURT: Can I ask you a question? Did the—
17           MS. BURBINE: Yes.
18           THE COURT: Because I couldn't understand this
19   from the record, and I may have misread the briefs. The
20   Commonwealth didn't recommend concurrent time, did it?
21           MS. BURBINE: No. The Commonwealth asked for on
22   and after.
23           THE COURT: So there was no, was there a plea
24   agreement here?

Commonwealth v. Casey                                            Page 34

1    MS. BURBINE: It seems that the defendant was
2    under the impression that if he went, if he offered a
3    guilty plea in Plymouth County, he would receive concurrent
4    sentences, but—
5    THE COURT: But the Commonwealth wasn't—
6    MS. BURBINE: During the sentencing phase, the
7    Commonwealth asked for a—
8    THE COURT: For on and after.
9    MS. BURBINE: Yes.
10   THE COURT: So there was no plea agreement as far
11   as you know?
12   MS. BURBINE: Yes.
13   THE COURT: And where could this impression have
14   come from, the judge?
15   MS. BURBINE: Perhaps, a lot-- I obviously don't
16   know. There is nothing in the record to tell us where that
17   came from. But he states in his affidavit that he was
18   certain that he would get, he had been assured he would get
19   concurrent time if he pled guilty in Plymouth County. And
20   I would just state that Judge Chin properly rejected his
21   claim in his Affidavit that he was unaware of any grounds
22   on which the Bristol County convictions could be reversed.
23   THE COURT: But what did the prosecutor say in
24   response to the judge's question about the recommendation?